IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JORDAN POLO,

                Plaintiff,

v.                                                  OPINION and ORDER

FRANK BISIGNANO,                                      23-cv-611-jdp
Commissioner of the Social Security Administration,

                Defendant.[1]

---

      Plaintiff Jordan Polo seeks judicial review of a final decision of defendant Frank Bisignano, Commissioner of the Social Security Administration, finding that Polo was not disabled within the meaning of the Social Security Act. Polo contends that administrative law judge (ALJ) Joseph Jacobson mishandled the medical opinions and gave inadequate reasons for refusing to credit Polo's subjective complaints. The ALJ's decision is supported by substantial evidence, and Polo has not identified any legal errors in the decision, so the court will affirm the decision.

BACKGROUND

      Polo applied for disability benefits, alleging disability beginning in August 2019. R. 19.[2] The ALJ found that Polo suffered from the following severe impairments: "disorder of the skeletal spine," "a personality disorder," "an affective disorder," and obesity. R. 19–20. Based on these impairments, the ALJ found that Polo had the residual functional capacity (RFC) to

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

[2] Record cites are to the administrative transcript located at Dkt. 5.

perform light work, with some additional physical restrictions for climbing, stooping, crouching, and crawling. R. 23. As for mental impairments, the ALJ restricted Polo to the following work:

- a low-stress job that requires no more than occasional decision making or changes in the work setting;

- no piece work or fast-moving assembly line work;

- no more than occasional interaction with the public, co-workers, or supervisors.

*Id.* Relying on the testimony of a vocational expert, the ALJ found that Polo could not perform any of her past relevant work, but she was not disabled because she could perform jobs that exist in significant numbers in the national economy, such as routing clerk (someone who boxes items for delivery) and cleaner/housekeeper. R. 35.

Polo now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

## ANALYSIS

Polo challenges the ALJ's decision on two grounds: (1) the ALJ gave inadequate reasons for refusing to credit Polo's subjective complaints; and (2) the ALJ mishandled the medical opinions.

A. **Subjective complaints**

Polo testified during the administrative hearing about her mental and physical symptoms and limitations. As for her mental health symptoms, she stated the following:

- She suffers from panic attacks, both when she is around other people and when she is alone; the attacks occurred two or three times a week when she was working and would last one to three hours. R. 51, 57, 59.

- She could not finish orientation at one job because of a panic attack. R. 52.

- She was fired from a past job for "not getting along with the manager," and she was "calling out" one or two days a week. R. 52, 58.

- She answered "yes" when her counsel asked whether she had ever "blown up" at her bosses and whether that was "a frequent thing." R. 61.

- She had difficulty with a housekeeping job because she would "forget, like, products bringing into the room, or [she] would forget to make the bed correct," and she could not do the work in the time allowed. R. 58, 60.

- She cannot read a book or a newspaper because her "mind goes off into a different direction." R. 60.

Polo also described her physical symptoms:

- She can sit for 10 to 20 minutes. R. 53.

- It is "hard" for her to lift groceries; she can "maybe lift one" gallon of milk, but she would not be able to carry a gallon of milk for one-third of an eight-hour workday. R. 53, 58.

- Her mother does all her cooking for her because "standing at . . . the stove or countertop . . . gets to be to[o] long for" her and her "back starts to bother" her. R. 54.

- She "struggle[s]" to get dressed "because of [her] back." R. 58.

The ALJ discussed most of this testimony in his decision but found that it was only "partially consistent" with the medical evidence. R. 29–30. As for Polo's mental health symptoms, the ALJ offered the following reasons:

3

- Polo did not receive "the type of mental health treatment one would expect for a totally disabled individual": treatment consisted of "medication management" appointments with her psychiatrist every two to eight months; she did not receive counseling, and she was never hospitalized for mental health symptoms. R. 29.

- Mental health status exams showed that Polo was anxious and depressed, but the exams were otherwise normal. *Id.*

- Polo lost her housekeeping job because of the COVID pandemic, not her symptoms. *Id.*

The ALJ gave the following reasons for not fully crediting Polo's physical symptoms:

- X-rays showed only mild to moderate degenerative changes, which is inconsistent with an ability to sit only 20 minutes at a time or being unable to lift more than a gallon of milk because of back pain. R. 30.

- Polo's symptoms were adequately managed with medication and steroid injections. *Id.*

- Polo repeatedly declined offers for physical therapy. *Id.*

- Polo sometimes reported pain of 8 or higher on a 10-point scale, but her medical providers did not observe any signs of distress. *Id.*

- Exams showed tenderness or reduced range of motion in the lumbar spine but were otherwise normal. *Id.*

- Polo told an examining consultant that she used a walker, but she did not mention this in the function report that she submitted to the agency, and treatment notes do not indicate the use of an assistive device or the need for one. *Id.*

- Polo did not complain to medical providers that she had difficulty dressing or bathing. *Id.*

- In her function report, Polo said laundry was the only household chore she could do, but she told the examining consultant that she could sweep and vacuum as well. R. 31.

- She told the examining consultant that she could cook for herself, which was inconsistent with her testimony during the hearing and the statement in her function report. *Id.*

4

The ALJ also provided reasons that applied to both physical and mental symptoms:

- After losing her housekeeping job, Polo received unemployment benefits, suggesting that she believed she could still work. *Id.*

- Polo gave medical providers inconsistent answers about her marijuana use. *Id.*

- Polo told her psychiatrist in November 2018 that she had been homeless since May 2018, but she said nothing about that to her psychiatrist during a June 2018 appointment, instead stating that she was doing well. *Id.*

The question on appeal is whether the ALJ gave specific reasons supported by the record for refusing to credit Polo's subjective complaints. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278–79 (7th Cir. 2022). The court will separately consider Polo's subjective complaints about her mental and physical abilities.

1. **Mental abilities**

Polo raises several objections to the ALJ's reasons for declining to fully credit Polo's subjective complaints about her mental limitations. None are persuasive.

First, Polo says that the ALJ was "playing doctor" by determining for himself "the significance of the medical data." Dkt. 6, at 10. As this court has observed before, there is sometimes a fine line between weighing the evidence (which the ALJ is required to do) and acting as a medical expert (which the ALJ may not do). *Fanning v. Kijakazi*, No. 22-cv-255-jdp, 2023 WL 6172251, at *2 (W.D. Wis. Sept. 22, 2023). In this case, the ALJ relied on the results of Polo's mental status examinations and her course of treatment. Generally, an expert is not needed for that type of analysis. *See, e.g., Prill v. Kijakazi*, 23 F.4th 738, 750 (7th Cir. 2022); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009). The cases Polo cites involved interpretation of complex medical records. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ determined that claimant did not need a hip replacement based on MRI that no medical

5

expert had reviewed); *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (ALJ interpreted results of monofilament test). Polo does not identify any complex medical records that the ALJ in this case relied on. In any event, the ALJ largely adopted the opinion of psychological consultant John Warren regarding Polo's mental limitations. R. 32. Like the ALJ, both of the state-agency psychological consultants found that the medical evidence did not support Polo's subjective complaints. R. 74–75, 101–02. So even if Polo's medical records were too complex for the ALJ to understand, he was entitled to rely on Warren.

Second, Polo says that the ALJ cherry-picked the record, disregarding evidence that Polo suffered from psychiatric symptoms, including depression, anxiety, and irritability. But the ALJ provided a thorough summary of Polo's medical history, and the ALJ acknowledged that Polo suffered from the symptoms Polo identifies. R. 24–29. The ALJ is not required to discuss every medical record. *Grotts*, 27 F.4th at 1279. The question is not simply whether Polo suffered from mental health symptoms; the question is whether those symptoms are disabling. Polo does not explain how any record the ALJ did not expressly discuss shows that Polo is more limited than what the ALJ found.

Third, Polo says that the ALJ erred by relying on the limited treatment she received for mental health symptoms. Polo does not dispute that the ALJ may consider a claimant's conservative course of treatment to discount her subjective complaints. That is established in both the regulations and the case law. *See* 20 C.F.R. § 404.1529(c)(3)(v); *Baptist v. Kijakazi*, 74 F.4th 437, 445 (7th Cir. 2023); *Prill*, 23 F.4th at 749; *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009). But Polo says that the ALJ erred by failing to either identify what other treatment would have been appropriate or consider other reasons why she did not receive more treatment.

6

As for other treatment that Polo could have received, the ALJ *did* identify such treatment, noting that Polo did not seek counseling, had never been hospitalized for mental health symptoms, and had infrequent appointments with her psychiatrist. R. 29. As for the ALJ's failure to consider potential reasons for lack of treatment, Polo cites Social Security Ruling 16-3p, which states that the agency "will not find an individual's symptoms inconsistent with the evidence in the record [based on lack of treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." But in the cases Polo cites, there was affirmative evidence in the record suggesting that the claimant could not pay for additional treatment. *See Goins v. Colvin*, 764 F.3d 677, 679–80 (7th Cir. 2014) (claimant did not have insurance); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("a number of medical records reflected that Craft had reported an inability to pay for regular treatment and medicine"). In this case, Polo says that she was seeking Supplemental Security Income and was homeless for part of the disability period, which suggests that she could not afford additional treatment. But the ALJ noted that Polo gave inconsistent answers about being homeless and, more important, that Polo had insurance. R. 24.[3] Polo points to no evidence suggesting that any medical provider declined to prescribe, or that she declined to seek, mental health treatment because of an inability to pay for it. So if the ALJ erred by failing to discuss possible financial reasons for failing to seek more treatment,

---

[3] Polo says that the ALJ "did not identify any evidence that Plaintiff did not suffer a period of homelessness." Dkt. 6. But that's inaccurate. The ALJ compared Polo's statement to her psychiatrist in November 2018 that she had been homeless since May 2018 with her statement to her psychiatrist in June 2018 that she was doing well, without saying anything about being homeless. R. 31. Perhaps Polo simply misremembered in November 2018 when she became homeless, but it was not unreasonable for the ALJ to draw an adverse inference, so the court may not reweigh the evidence. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859–60 (7th Cir. 2023).

that error was harmless. *See Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (any error in failing to discuss reasons for not seeking treatment was harmless because the plaintiff "has not pointed to anything in the record to show that her doctors considered more invasive treatments, nor has she identified any specific reason that she did not seek more treatment").

Fourth, Polo says the ALJ erred by observing in his credibility analysis that Polo lost her housekeeping job because of the COVID pandemic rather than because she could not perform the job. Specifically, Polo says that the ALJ did not explain why the reason she lost her job was relevant, and he did not consider the difficulties she had performing that job. But the ALJ did acknowledge Polo's alleged difficulties, repeating her testimony about her housekeeping job that she was not "a reliable employee" because of her mental health symptoms. R. 22. And it is obvious why the ALJ's observation is relevant: Polo's ability to keep her job despite her alleged symptoms undermines her testimony that her symptoms were too severe to sustain full-time work.

Fifth, Polo says that the ALJ should not have relied on Polo's collection of unemployment benefits because that is "not necessarily dispositive of a claimant's perceived ability to sustain work." Dkt. 6, at 14. But "[t]he case law of this circuit clearly permits the ALJ to give some consideration to such activity [applying for and receiving unemployment] on the part of the applicant when assessing his credibility." *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014). It is true that "[a]ll of the surrounding facts must be carefully considered." *Id.* For example, in *Scrogham*, the ALJ failed to consider that the claimant had applied for unemployment benefits before her condition had deteriorated. *Id.* In this case, Polo does not allege that her condition worsened after her onset date, and she does not otherwise point to evidence that the ALJ failed to consider.

8

## 2. Physical abilities

Polo raises mostly the same objections to the ALJ's consideration of her subjective complaints about her physical abilities, and those objections fail for the same reasons as her objections about her mental abilities. The ALJ was entitled to consider the observations of Polo's healthcare providers and her failure to seek more aggressive treatment.

Polo also challenges the ALJ's reliance on perceived inconsistencies in Polo's statements, contending that the differing statements "may reflect exacerbations and remissions of symptoms." Dkt. 6, at 14–15. But it is well established that an ALJ may rely on a claimant's inconsistent description of her symptoms when assessing subjective complaints. *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018); *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). It is true that some conditions may wax and wane, so the ALJ may not simply point to isolated "good days" as evidence that the claimant is not disabled. *Swiecichowski v. Dudek*, 133 F.4th 751, 758–59 (7th Cir. 2025); *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011). But that is not what the ALJ did here. Rather, he looked at Polo's entire medical history during the alleged period of disability, and he identified inconsistencies in Polo's description of her symptoms regarding her need to use a walker and her ability to dress herself and perform household chores.[4] Polo does not point to any medical records or even her own testimony suggesting that her physical symptoms varied during the onset period. Further, some of the

---

[4] The ALJ also relied on inconsistent statements about Polo's marijuana use. R. 30. Polo says that was improper under Social Security Ruling 16-3p, which states that the agency "will not assess an individual's overall character or truthfulness." The court understands Polo to contend that Polo's marijuana use was not relevant to her symptoms, so the ALJ should not have considered any inconsistent statements on that issue. The court need not consider this argument because the ALJ's decision was supported by substantial evidence, even if Polo's marijuana use was irrelevant. *See Tutwiler*, 87 F.4th at 858–59 (upholding ALJ's credibility determination despite disagreeing with some underlying reasons for that decision).

ALJ's observations were not about specific points in time but rather based on Polo's failure to *ever* raise certain issues with her medical provider (such as using a walker or difficulties dressing herself) despite raising those issues during the administrative proceedings.

The ALJ thoroughly explained why he was not fully crediting Polo's subjective complaints, and his reasons are supported by substantial evidence. So Polo's challenge to the ALJ's decision on this issue fails.

## B. Medical opinions

When evaluating medical opinions, the ALJ is required to consider how well supported the opinion is and whether it is consistent with other evidence in the record. 20 C.F.R. § 416.920c(a); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). In this case, the ALJ considered the opinions of six medical experts.

Psychological consultant Jason Kocina conducted a record review, concluding that Polo had some mild or moderate mental health limitations. The ALJ found the Kocina's "basic conclusions" were consistent with the evidence, but the opinion was only "partially persuasive" because Kocina did not offer any specific functional restrictions. R. 31.

Psychological consultant John Warren conducted a record review, generally agreeing with Kocina but describing some functional limitations. The ALJ found that Warren's opinions were "generally persuasive." R. 32.

Psychologist Travis Hinze conducted a consultative examination, concluding that Polo had marked limitations in interacting with others, moderate to marked limitations in adaptation, and moderate limitations in understanding and remembering as well as concentration, persistence, or pace. The ALJ found Hinze's opinions to be partially persuasive,

reasoning that they were inconsistent with numerous medical records, so Hinze must have "relied heavily on the claimant's self-reporting." R. 32–33.

Psychiatrist Brian Proctor treated Polo. In 2019, he diagnosed Polo with bipolar disorder and stated that it was "a disabling condition." The ALJ found that the opinion was not persuasive because it was a conclusory statement without functional limitations. R. 33. In 2022, Proctor provided a more detailed opinion, finding that Polo suffered extreme or marked limitations in multiple areas of mental functioning and would be absent from work at least four days a month because of her symptoms. The ALJ found that the opinion was not persuasive because it suggested that Polo had a "complete inability to function independently," which was inconsistent with Proctor's own treatment notes and Polo's activities of daily living. R. 33.

Physician William Fowler conducted a record review, concluding that Polo could perform the full range of light work. The ALJ found that opinion was partially persuasive but that the evidence supported additional postural restrictions. R. 31.

Physician Marcus Powers conducted a consultative examination, finding that Polo could lift and carry 20 pounds occasionally and sit, stand, and walk occasionally, with a sit/stand option. The ALJ found that Powers's opinion was only partially persuasive because Powers did not explain what he meant by "occasionally," and neither Polo's medical records nor Powers's own examination supported a finding that Polo needed a sit/stand option. R. 32.

Polo does not challenge the ALJ's handling of Fowler or Proctor's opinions, so the court need not consider those. But Polo says that the ALJ did not give adequate reasons for refusing to fully credit the opinions of the examining consultants, and he failed to explain why he did not incorporate all the limitations of the non-examining psychological consultants despite finding that those opinions were persuasive.

### 1. Examining consultants

Polo contends that the ALJ did not adequately explain why he did not adopt the opinions of Travis Hinze, who offered opinions on Polo's mental limitations, and Marcus Powers, who offered opinions on Polo's physical limitations.

#### a. Travis Hinze

Polo says that the ALJ rejected Hinze's opinion on the ground that Hinze relied on Polo's subjective complaints, which was improper for two reasons. First, according to Polo, the ALJ did not provide a basis for concluding that Hinze's opinion was based on Polo's subjective complaints. Second, a psychological opinion is necessarily based in part on subjective complaints, so relying on them is not a reason to discount an opinion.

Polo's argument rests on a false premise. The ALJ did state that Hinze relied on Polo's subjective complaints, but the ALJ's reason for rejecting Hinze's opinion was that it was inconsistent with medical records, including the mental status examinations, which had mostly normal results. And the ALJ implicitly adopted Warren's reasoning for rejecting Hinze's opinion when the ALJ concluded that Warren's opinion was generally persuasive. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (medical opinion is "factored indirectly into the ALJ's decision" when the ALJ adopts that opinion). Warren rejected Hinze's opinion for multiple reasons, including that it did not have substantial support in the record, it was inconsistent with Polo's mental status exams, and it included limitations for impairments that Hinze did not examine. R. 105. Polo does not challenge Warren's reasoning, and she does not explain why the ALJ was required to prefer Hinze's opinion over Warren's. The court may not reweigh the evidence. *See Grotts*, 27 F.4th at 1278.

### b. Marcus Powers

As she did with Hinze, Polo contends that the ALJ rejected Powers's opinion because it rested on Polo's subjective statements, but that, again, is incorrect. The ALJ stated that Powers's opinion was vague and was not supported by the results of his own examination. R. 32. These are both valid bases to reject an opinion. *See Hess v. O'Malley,* 92 F.4th 671, 678 (7th Cir. 2024) (ALJ may reject vague opinions); *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (ALJ may reject opinions that are inconsistent with doctor's notes). In any event, Polo does not challenge either basis, so she forfeited that issue.

### 2. Non-examining psychological consultants

Both Kocina and Warren found that Polo was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. R. 81, 107. Polo contends that the ALJ erred by adopting Kocina and Warren's opinions but failing to incorporate that limitation in the RFC assessment. Polo acknowledges that the RFC assessment includes a restriction for a low-stress job that has no more than occasional interaction with supervisors, but she says that does not account for the limitations found by the consultants because the RFC's restriction relates to the frequency of interaction, and the consultants' opinions are about the "nature" of interaction. Dkt. 6, at 17.

Polo does not identify what restriction she believes the ALJ should have included. Regardless, her argument fails because Warren explained in the narrative portion of his opinion that Polo is "able to sustain the basic demands associated with relating adequately with supervisors and co-workers, with limited contact with the general public." R. 107. That is consistent with the RFC assessment, so there is no conflict that the ALJ had to explain. Warren

13

did not suggest that an additional restriction was needed related to the "nature" of Polo's interactions with supervisors.

Unlike Warren, Kocina did not explain what he meant when he said that Polo was moderately limited in her ability to accept instructions and criticism from supervisors. But that was exactly why the ALJ did not fully credit Kocina's opinion: Kocina "did not offer any specific functional restrictions." R. 31. Polo does not challenge the ALJ's decision on that issue, so the court need not speculate on what Kocina may have meant.

The bottom line is that the ALJ's decision is both reasoned and supported by the evidence. Polo has not identified any errors that require a remand, so the court will affirm the ALJ's decision.

## ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment and close the case.

Entered July 22, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge